# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| IN RE:<br><br>SHERRY N. VAN ALLEN,<br><br>    Debtor.<br><br>---<br><br>STEWART TITLE GUARANTY COMPANY<br><br>    Plaintiff,<br><br>v.<br><br>SHERRY N. VAN ALLEN,<br><br>    Defendant. | Case No. 17-40614-MJK<br>Chapter 13<br><br><br><br><br><br>Adv. Proc. No: _____ |

## COMPLAINT

COMES NOW, Stewart Title Guaranty Company ("Stewart" or "Plaintiff"), and files this Complaint, stating as follows:

## JURISDICTION

1. This Court has subject-matter jurisdiction over this proceeding under 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This adversary proceeding relates to the Chapter 13 case captioned *In re Sherry N. Van Allen*, Case No. 17-40614-MJK, pending in the United States Bankruptcy Court for the Southern District of Georgia (the "Bankruptcy Case").

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409(a).

3. This is a core proceeding arising under title 11, which this Court may "hear and determine" under 28 U.S.C. § 157(b)(2)(I). In the event that this is deemed a non-core proceeding, Stewart consents to the entry of final judgment by this Court.

1

4. This adversary proceeding is brought pursuant to Fed. R. Bankr. P. 4007 and 7001. The statutory predicate for the relief sought is 11 U.S.C. § 523.

## PARTIES

5. Sherry N. Van Allen ("Van Allen") is an individual who, according to her Chapter 13 bankruptcy petition, resides at 121 Creekwood Drive, Bloomingdale, GA 31302-4059.

6. Stewart is a title insurance underwriter organized under the laws of the State of Texas and authorized to conduct business in Georgia.

## FACTS

7. On or around March 26, 2007, Van Allen obtained a loan (the "Coastal Bank Loan") from The Coastal Bank ("Coastal Bank"), in the amount of $220,000.00. As further described herein, in order to secure the Coastal Bank Loan, Van Allen pledged to Coastal Bank a first position lien on the real property commonly known as 3 Rice Mill Drive, Savannah, Georgia 31419 (the "Property").

8. When Van Allen applied for the Coastal Bank Loan, she completed a *Uniform Residential Loan Application* (the "Loan Application"), whereby she submitted financial information to Coastal Bank. A redacted copy of the Loan Application is attached hereto as **Exhibit "A"**.

9. In the Loan Application, Van Allen represented to Coastal Bank and its insurers: (i) the value of the Property at the time of the Loan Application was $275,000.00; and (ii) there were no other liens on the Property. The Transaction was intended by Van Allen to be a cash-out refinance.

10. On March 26, 2007, as security for the Coastal Bank Loan, Van Allen executed a *Security Deed* (the "Coastal Bank Security Deed"), conveying the Property to Mortgage

2

Electronic Registration Systems, Inc. ("MERS"), as nominee for Coastal Bank, which was recorded on April 4, 2007, in Book 323 O, Page 324 of the real property records of the Superior Court of Chatham County, Georgia (the "Real Property Records"). A true and correct copy of the Coastal Bank Security Deed is attached hereto as **Exhibit "B"**.

11.     The Coastal Bank Security Deed was later assigned to Federal National Mortgage Association ("Fannie Mae") pursuant to the *Corporate Assignment* (the "Assignment") by MERS to Fannie Mae dated January 6, 2017, and recorded on January 18, 2017, in Book 990, Page 548 of the Real Property Records. A true and correct copy of the Assignment is attached hereto as **Exhibit "C"**.

12.     In furtherance of the Coastal Bank Loan Closing, Van Allen signed an *Owner's Affidavit* (the "Owner's Affidavit"), representing that "the property is free and clear of all liens . . . or any other encumbrances whatsoever which could affect in any way the title to the property, or constitute a lien thereon. . . .." A true and correct copy of the Owner's Affidavit is attached hereto as **Exhibit "D".**

13.     In furtherance of the Coastal Bank Loan Closing, Van Allen also signed a *Property Owner's Affidavit* (the "Property Owner's Affidavit") affirming under oath that (i) she "knows of no one claiming under any unrecorded deed, or instrument of any nature; or claiming any interest in said lands whatsoever" and (ii) "said property is free and clear of all liens of every character. . . ."  A true and correct copy of the Property Owner's Affidavit is attached hereto as **Exhibit "E".**

14.     In furtherance of the Coastal Bank Loan Closing, Van Allen also signed an *Occupancy and Financial Status Affidavit* (the "Financial Status Affidavit"), in which she represented that "the information provided by [Debtor] contained in, or made in connection with

the Loan Application related to [Debtor's] financial status (such as [Debtor's]. . . credit obligations. . .), has not changed significantly and that the such information accurately reflects Borrower's current finical status." A true and correct copy of the Financial Status Affidavit is attached hereto as **Exhibit "F".**

15. In furtherance of the Coastal Bank Loan Closing, Van Allen also signed a copy of the Loan Application.

16. In furtherance of the Costal Bank Loan Closing, Van Allen signed the HUD-1 Settlement Statement ("HUD-1") wherein she attested that the HUD-1 reflected an accurate statement of all receipts and disbursements that should be made in the Transaction. A true and correct copy of the HUD-1 is attached hereto as **Exhibit "G"**.

17. According to the HUD-1, Van Allen received a $212,738.76 cash disbursement as a result of the Coastal Bank Loan Closing.

17. Unbeknownst to Costal Bank, on March 13, 2007 (approximately two weeks prior to the Coastal Bank Loan Closing), Van Allen acquired a loan from Wells Fargo Bank, N.A. f/k/a Wachovia Bank, National Association ("Wells Fargo") in the amount of $115,000.00 (the "Wells Fargo Loan").

18. Van Allen secured the Wells Fargo Loan with a *Home Equity Line of Credit Security Deed* (the "Wells Fargo Security Deed") against the Property, which was executed by Van Allen in favor of Wells Fargo and recorded on April 3, 2007 (the day before the Coastal Bank Security Deed was recorded) in Book 323 M, Page 579 of the Real Property Records. A copy of the Wells Fargo Security Deed is attached hereto as **Exhibit "H"**.

19. Upon information and belief, Van Allen did not disclose to Coastal Bank her application for, negotiation of, or closing of the Wells Fargo Loan at any time.

4

20. Upon information and belief, Van Allen intended to and willfully gave false statements on the Loan Application, Owner's Affidavit, Property Owner's Affidavit, Financial Status Affidavit, and HUD-1 in order to induce Coastal Bank to make the Coastal Bank Loan, as it would not have done so if it did not believe it was being given a first priority security interest in the Property.

21. The Loan Application, Owner's Affidavit, Property Owner's Affidavit, Financial Status Affidavit, and HUD-1 as well as the public record, were relied upon by Douglas P. McManamy ("McManamy"), who served as the closing attorney on behalf of Coastal Bank and as policy issuing agent for Stewart. McManamy relied upon these documents to issue the Title Insurance Policy on behalf of Stewart, without exception to the Wells Fargo Security Deed.

22. Van Allen was aware that her misrepresentations would be relied upon by Stewart, as the Financial Status Affidavit states that

> Borrower understands further that any intentional or negligent misrepresentation(s) of the information contained in, or made in connection with, the Loan Application may result in severe civil and/or criminal penalties, including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq. and liability for monetary damages to the Lender, its agents, successors and assigns, insurers and any other person who may suffer any loss due to reliance upon any misrepresentation(s) which Borrower has made on or in connection with the Loan Application.

22. In reliance on the Loan Application, Owner's Affidavit, Property Owner's Affidavit, Financial Status Affidavit, and HUD-1 as well as the public record, Stewart underwrote a policy of title insurance to Coastal Bank, its successors and assigns, without exception to the Wells Fargo Security Deed (the "Title Insurance Policy"). A true and correct copy of the Title Insurance Policy is attached hereto as **Exhibit "I"**.

23. If Van Allen had disclosed the existence of the Wells Fargo Security Deed, Stewart would have required payment and cancellation of the Wells Fargo Security Deed or

would have required that the Wells Fargo Security Deed be raised as an exception to coverage under its Title Insurance Policy.

24. On April 26, 2017, Van Allen filed the Bankruptcy Case.

25. In Schedule D of her Bankruptcy Petition, Van Allen listed (i) Wells Fargo as having a fully secured first mortgage on the Property in the amount of $115,358.00 and (ii) Seterus Inc., understood to be the loan servicer for Costal Bank, as having a second mortgage comprised of a secured claim in the amount of $198,877.00 and an unsecured claim in the amount of $59,135.00. None of the mortgage debt was listed as contingent, unliquidated, or disputed.

26. In Van Allen's Chapter 13 Plan filed on April 26, 2017 [Doc No. 2], Van Allen stated her intention to surrender the Property.

27. Seterus, Inc., on behalf of Coastal Bank, tendered a claim to Stewart under its Title Policy seeking defense of its first lien and / or indemnification of any loss resulting from the existence of the Wells Fargo Security Deed.

28. To the extent that Stewart becomes obligated under its Title Policy to pay the Wells Fargo Loan balance in order to protect its insured, Stewart will be contractually subrogated to the rights and claims of Coastal Bank against Van Allen.

29. To the extent that Stewart becomes obligated under its Title Policy to pay the Wells Fargo Loan balance in order to protect its insured, Stewart will have direct claims in equity and at law against Van Allen.

30. The balance due and owing on the Wells Fargo Security Deed as of May 19, 2017 was $119,650.38.

31. Stewart has filed a proof of claim for an unliquidated debt.

## COUNT I
## DETERMINATION OF NON-DISCHARGEABILITY OF DEBT
## 11 U.S.C. § 523(a)(6)

32. Paragraphs 1 through 31 are incorporated herein.

33. Pursuant to 11 U.S.C. § 523(a)(6), "[a] discharge under section 727, 1141, 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt- for willful and malicious injury by the debtor to another entity or to the property of another entity."

34. Based on the facts set forth herein, the Debtor has committed the tort of fraud, which has or will cause damage to Stewart in the amount of at least $119,650.38.

35. Stewart is entitled to a determination that its claim against the Debtor is nondischargable under 11 U.S.C. § 523(a)(6).

## COUNT II
## DETERMINATION OF NON-DISCHARGEABILITY OF DEBT
## 11 U.S.C. § 523(a)(2)

36. Pursuant to 11. U.S.C. § 523(a)(2)(A), "[a] discharge under section 727, 1141, 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt- for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by- false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

37. In this case, (1) the Debtor made representations to Coastal Bank, which were relied upon by Stewart in underwriting a Title Insurance Policy insuring the Coastal Bank Security Deed to be a first position lien on the Property; (2) that Van Allen's representations were knowingly false, as evidenced by the fact that Van Allen executed the Wells Fargo Security Deed approximately two weeks prior to the Coastal Bank Loan Closing; (3) that Van Allen made the knowingly false representations to induce Coastal Bank to make the Coastal Bank Loan and

to induce Stewart to underwrite the Title Policy required by the Coastal Bank ; (4) Stewart actually and justifiably relied upon Van Allen's false representations; and (5) Stewart will sustain a loss as a proximate result of its reliance on Van Allen's false representations to the extent it is obligated under its Title Insurance Policy to defend Coastal Bank against Wells Fargo Security Deed and/or to indemnify Costal Bank for the loss suffered due to the existence of the Wells Fargo Security Deed. .

38. Pursuant to 11. U.S.C. § 523(a)(2)(B), "[a] discharge under section 727, 1141, 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt- for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by- use of a statement in writing- (1) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is labile for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."

39. In furtherance of the Wells Fargo Loan Closing, the Debtor signed the Owner's Affidavit, the Property Owner's Affidavit, the Financial Status Affidavit, and the Loan Application, which all represent in writing that there were no undisclosed security interests encumbering the Property. These materially false statements concerned the Debtor's equity in the Property. Stewart reasonably relied upon the Owner's Affidavit, the Property Owner's Affidavit, the Financial Status Affidavit, and the Loan Application when it agreed to underwrite the Costal Bank Security Deed without exception to the Wells Fargo Security Deed.

40. Under 11. U.S.C. § 523(a)(2)(A) and (B), this Court should determine Stewart's claim to be nondischargable.

## **PRAYER FOR RELIEF**

WHEREFORE, Stewart respectfully requests that the Court enter a judgment in its favor and declare that Stewart's claim is nondischargeable, and grant such further relief as this Court deems proper.

Respectfully submitted this 24th day of July, 2017.

>*/s/ Bret J. Chaness*
>BRET J. CHANESS (GA Bar No. 720572)
>**RUBIN LUBLIN, LLC**
>3145 Avalon Ridge Place, Suite 100
>Peachtree Corners, GA 30071
>(678) 281-2730 (Telephone)
>(404) 921-9016 (Facsimile)
>bchaness@rubinlublin.com
>
>*Attorney for Stewart Title Guaranty Company*